UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-10460-RGS

CITY OF FRAMINGHAM

v.

DURHAM SCHOOL SERVICES, L.P.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

May 19, 2023

STEARNS, D.J.

Plaintiff City of Framingham (the City) brings this suit against defendant Durham School Services, L.P. (Durham) for its alleged failure to adequately staff buses during the 2019-2020 and 2020-2021 school years. The Complaint asserts claims for breach of contract (Count I), breach of the associated covenant of good faith and fair dealing (Count II), negligent misrepresentation (Count III), and violations of the Massachusetts Fair Business Practices Act (MFBPA), Mass. Gen. Laws. ch. 93A, § 11 (Count IV). Durham moves to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will deny the motion.

## BACKGROUND

The facts, drawn from the Complaint and the documents it incorporates by reference, and viewed in the light most favorable to plaintiff as the nonmoving party, are as follows.  On August 1, 2016, the City entered into a five-year Agreement for School Transportation Services (Agreement) with Durham that, *inter alia*, required Durham to staff 77 bus routes for the City's schools.  From the beginning of the 2019-2020 school year, Durham repeatedly failed to adequately staff these bus routes, causing patterns of delays (sometimes as long as 45 minutes) and, as winter approached, forcing children to wait outside in below-freezing temperatures.  In light of these events, on December 18, 2019, the City notified Durham that it was in breach of the Agreement.

Durham then addressed the staffing issues, and in February of 2020, the City informed Durham that it had decided not to assess a financial penalty or terminate the Agreement "at that time."  Compl. (Dkt # 13 at 4-13) ¶ 14.  The City, however, reserved the right to assess a financial penalty or terminate the Agreement in the future if problems recurred.

One month later, in-person instruction in the City's schools was halted because of the COVID-19 pandemic.  As the Agreement obligated the City to pay Durham only for buses actually used to transport students (at a per bus

daily rate), the parties negotiated a series of amendments to the Agreement to allow Durham to remain financially viable until in-person instruction resumed. Under the last of these amendments (the Third Amendment), the City agreed to pay Durham 50% of the daily rate for all 77 buses for which it had contracted under the Agreement while instruction remained remote. In return, Durham agreed to "perform routine maintenance as required on all buses that were utilized as of the initial date of the Closure," and to "be prepared to deploy buses and resume routes in whole or in part, upon reasonable written notice." Third Amendment (Dkt # 13 at 15-16) ¶ 1.

On December 11, 2020, the City informed Durham that it would begin a four-step phased return to in-person instruction starting at the end of January of 2021. The City subsequently decided to begin the first two phases on February 3, 2021; the third phase on February 24, 2021; and the fourth (and final) phase on March 3, 2021. Although the Complaint does not explicitly state that this schedule was presented to Durham, the court can reasonably infer that it was because Durham appears to have resumed sufficient transportation services in accordance with the first three phases of the schedule.

On either February 23 or 24, 2021, the City informed Durham that it intended to deploy the full retinue of 77 buses beginning on March 3, 2021.[1] *Compare* Compl. ¶ 26 (February 24), *with* March 2, 2021 Letter (Dkt # 13 at 69-71) at 2 (February 23).  Durham informed the City that it was not prepared to resume transportation services using all 77 buses.  Two days later, the City sent Durham a notice of breach.  Durham responded on March 2, 2021, claiming that it was not in breach because the City had not provided it with adequate notice that "the full complement of routes" needed to be resumed.  March 2, 2021 Letter at 2.

The staffing issues were not resolved by the close of the 2020-2021 school year.  Durham never provided more than 56 drivers on any one day and, on average, provided only 54 drivers.  As was the case in the fall and winter of 2019, the staffing shortfall caused patterns of delays.

The City filed suit against Durham in Middlesex Superior Court on January 26, 2023.  Durham removed the case to this court and now moves to dismiss all claims.

---

[1] Durham argues that all 77 buses were not needed as of March 3, 2021, because the elementary and middle schools were not fully reopened until April of 2021.  But the court must draw all reasonable inferences in the City's favor at this stage of the litigation, and it is reasonable to infer from the request for all 77 buses that the City intended to use them (the City may, for example, have intended to run more routes to comply with social distancing requirements).

**DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

**a. Count I**

Durham asserts three arguments in favor of dismissing Count I, all of which fail for the same reason: They are premised on resolution of a factual dispute in Durham's favor, contrary to the Rule 12(b)(6) standard.

Durham first contends that the Complaint fails to state a claim because "the City has not alleged facts that would support a finding [that] the City complied with its condition precedent to provide Durham reasonable written notice of its demand that Durham increase its supply of buses and drivers from 53 to 77." Def.'s Mem. (Dkt # 9) at 12; *see also id.* at 13 ("The City does

not allege facts sufficient to support a finding it provided Durham 'reasonable written notice,' as required by Section 2, of its increased needs."). But the Complaint expressly alleges that the City informed Durham of its intent to resume in-person instruction in phased stages on December 11, 2020, and of its intent to resume using all 77 buses at least by February 23 or 24, 2021. Thus, to credit Durham's argument, the court would need to first determine, as a matter of law, that the February notice, coming on the heels of prior communications (like the December notice), failed to provide "reasonable" notice within the scope of the contract[2] – a factual determination that would be manifestly inappropriate at the motion-to-dismiss stage.

Durham next proposes that "the City's breach of contract claim fails as a matter of law" because "Durham performed fully under the" terms of the Agreement, as amended on March 1, 2021. Def.'s Mem. at 14. But the factual premise of this argument – that the Agreement *was* amended on March 1, 2021 – is entirely unsupported by any allegation within the Complaint.[3] The

---

[2] And because Durham failed to provide all 77 buses throughout the remainder of the school year, the court would need to assume that "reasonable" notice was not provided for any point between March and June of 2021.

[3] The only reference to this meeting is found in Durham's March 2, 2021 Letter, a copy of which the City attached to its Complaint. But the court cannot use the contents of that letter to establish the existence of an

court accordingly cannot dismiss based on Durham's alleged compliance with the Agreement as amended.

Finally, Durham maintains that the portion of the contractual claim premised on the failure to provide adequate staffing during the 2019-2020 school year is not "actionable" because the City accepted Durham's alleged cure of that breach. Def.'s Mem. at 10. But Durham does not explain why accepting cure of the breach, such that the City did not terminate the contract at a given point in time, would waive the City's rights to pursue damages flowing from the period that Durham remained in breach. Moreover, the Complaint does not independently compel a finding of waiver. The City alleges that it only informed Durham it would not assess a penalty "at that time" and expressly "reserved the right to do so in the future if similar issues arose." Compl. ¶ 14. The court accordingly denies the motion to dismiss Count I on the suggestion of a cure.

### b. Counts II and IV

Durham's arguments in favor of dismissal of Counts II and IV rest on the same premise, namely, that the City fails to plead the type of culpable

---

amendment to the Agreement – the City never admits to the accuracy of any information contained within the letter, and it would contravene the Rule 12(b)(6) standard to make an adverse factual finding against the City based solely on Durham's characterization of events.

conduct needed to establish liability. While the court acknowledges that this case may ultimately prove to be nothing more than a dispute about a mere breach of contract, it does not agree that the Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing or for violations of the MFBPA. The City alleges that Durham knowingly continued to collect payments under the contract despite being aware of its own noncompliance with that same contract.[4] This allegation, if proven true, could reasonably support a finding that Durham acted with bad faith and engaged in an unfair or deceptive practice. The court accordingly declines to dismiss Counts II or IV.

### c. Count III

With respect to Count III, Durham argues that, because the invoices do not actually contain any representations certifying preparedness to resume transportation services, the Complaint fails to state a claim for negligent misrepresentation. The court finds this argument unavailing. It can reasonably be inferred from the allegations in the Complaint that the act of submitting the invoice itself was a false representation that Durham was

---

[4] That the Complaint lacks more detailed allegations regarding Durham's state of mind is not altogether surprising. The City is unlikely to have access to evidence of Durham's state of mind at this early stage in the case.

ready to resume transportation services – or stated differently, that Durham represented compliance with the contract by invoicing the City for sums meant to secure continued preparedness and that, because Durham knew it was not in compliance when submitting the invoices, these representations were false. The court accordingly denies this aspect of the motion to dismiss.

### d. Damages

Durham asks the court to strike the City's demand for lost instructional time and educational costs. But the court declines to rule on the recoverability of certain types of damages at this juncture. It needs the benefit of a more developed factual record to adequately assess the parties' arguments.

To the extent Durham contends, in its Reply, that it means to challenge "whether the City adequately pleaded that *it* suffered damages," the court disagrees that the Complaint is deficient in this manner. Reply (Dkt # 20) at 2. The City directly alleges that it "incurred costs and suffered damages" as a result of Durham's conduct. Compl. ¶¶ 35, 38, 46, 52. And even assuming that lost instructional time and educational costs would not fall within the scope of this allegation, the court can reasonably infer that the City was injured by paying Durham for services under the Third Amendment which

Durham failed to perform and by incurring costs to secure alternative transportation for students.

## ORDER

For the foregoing reasons, the motion to dismiss is DENIED.

                            SO ORDERED.

                            /s/ Richard G. Stearns
                            UNITED STATES DISTRICT JUDGE